FILED
COURT OF APPEALS
DIVISION II

2013 JUL 16 AM 8: 45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 42996-9-II |
| SCOTT E. CRUMP, | |
| Appellant, | |
| and | |
| MARIA R. CRUMP, | UNPUBLISHED OPINION |
| Respondent. | |

WORSWICK, C.J. — Scott Crump appeals a parenting plan accompanying an order dissolving his marriage to Maria Crump.[1] Scott argues that the trial court erred by (1) imposing mandatory parenting plan restrictions on him, (2) failing to impose mandatory parenting plan restrictions on Maria, and (3) determining it would not be healthy for Scott to raise their child. We reverse in part and remand because the trial court erroneously imposed mandatory parenting plan restrictions on Scott, but otherwise we affirm.

## FACTS

Scott and Maria married in 2004. When they divorced in 2011, Scott and Maria had a 6-year-old son, RC.

During the marriage, Scott tracked Maria's activities and attempted to exert control so that she did not have an independent life outside his presence. Almost every weekday, Scott

---

[1] Because Scott Crump and Maria Crump share the same last name, we refer to them by their first names for clarity. We intend no disrespect.

went to Maria's workplace to take her to lunch so that he could know how she spent her free time away from him. Scott also obsessively called Maria's workplace. Four months into her job, Maria's employer banned Scott from the premises.

Maria had an anger management problem and at times acted with physical aggression toward Scott. In one incident, Maria engaged in "a display of rage" because Scott refused to give her RC's passport; she then grabbed Scott's shirt and used a meat tenderizer to destroy a camera. Clerk's Papers (CP) at 54.

After this incident, Scott obtained a temporary domestic violence protection order against Maria.[2] Scott also petitioned for dissolution.

During a four-day bench trial, Scott testified that Maria committed various acts that he characterized as domestic violence. Maria denied committing these acts, except that she admitted to grabbing Scott's shirt and destroying the camera with a meat tenderizer.

In its written ruling, the trial court found that Scott "displays characteristics of a perpetrator who is in need of domestic violence treatment." CP at 54. On the basis of that finding, the trial court ruled that RCW 26.09.191(2) required Scott's residential time with

---

[2] The order was based on a finding of probable cause to believe that Maria had been "charged with, arrested for, or convicted of a domestic violence offense." Ex. 6; *see* RCW 10.99.040(3).

RC to be restricted.[3,4] The trial court also ordered Scott to complete a domestic violence and anger management program and determined that it would not be healthy for Scott to raise RC.

The trial court ruled that Maria's "violent actions were not acts of domestic violence that involved coercion and control but were [instead] unreasonable acts of anger." CP at 56-57. Accordingly, the parenting plan required Maria to participate in counseling and complete an anger management treatment program, but the parenting plan did not impose mandatory restrictions on Maria or limit her residential time with RC.

The parenting plan ordered RC to reside with Maria for the majority of time during the school year and with Scott for the majority of the time during breaks from school. Scott appeals.

## ANALYSIS

Scott claims the trial court erred by (1) imposing mandatory parenting plan restrictions on Scott, (2) failing to impose mandatory parenting plan restrictions on Maria, and (3) determining that it would not be healthy for Scott to raise RC. We agree with Scott's first claim but disagree with the others.

---

[3] The trial court's conclusion of law 6 refers to "RCW 26.09.190(1)." CP at 57. This reference appears to be a typographical error.

[4] It is not clear to us precisely how the parenting plan restricts Scott's residential time with RC. The section on restrictions states in its entirety:

> [Scott]'s residential time with [RC] shall be limited because [mandatory restrictions are warranted]. The following restrictions shall apply when [RC] spend(s) time with this parent:
> [Scott] must continue active participation in a domestic violence/anger management program until successful completion.
> [Maria] shall continue in counseling as well as anger management treatment and do both until successful completion.

CP at 61-62.

A trial court has broad discretion when crafting a parenting plan, and we review its decision for an abuse of discretion. *In re Marriage of Caven*, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998). A trial court abuses its discretion when its decision is manifestly unreasonable or made on untenable grounds or for untenable reasons. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). This standard is also violated when a trial court bases its decision on an erroneous view of the law. *Mayer*, 156 Wn.2d at 684.

When the trial court has weighed the evidence, we review the trial court's challenged findings of fact for substantial evidence. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). Substantial evidence is a sufficient quantity of evidence to persuade a fair-minded, rational person that the finding is true. *Rockwell*, 141 Wn. App. at 242. We defer to the fact finder on witness credibility and the persuasiveness of the evidence. *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). Unchallenged findings of fact are verities on appeal. *Akon*, 160 Wn. App. at 57.

When substantial evidence supports the findings of fact, we then determine whether the findings of fact support the trial court's conclusions of law. *Rockwell*, 141 Wn. App. at 242. We review conclusions of law de novo. *In re Marriage of Herridge*, 169 Wn. App. 290, 297, 279 P.3d 956 (2012).[5]

A. *Mandatory Restrictions on Scott*

Scott first claims that the trial court erred as a matter of law by imposing mandatory parenting plan restrictions on Scott. We agree.

---

[5] Citing *Caven*, 136 Wn.2d at 806, Scott argues that the interpretation of RCW 26.09.191 and RCW 26.50.010 is a question of law reviewed de novo. But Scott has not challenged the trial court's interpretation of those statutes.

RCW 26.09.191 lists several circumstances under which the trial court must impose mandatory parenting plan restrictions. RCW 26.09.191(2)(a)(iii) requires a trial court to limit a parent's residential time if it finds, inter alia, that the parent has "a history of acts of domestic violence as defined in RCW 26.50.010(1)." RCW 26.50.010(1) defines domestic violence as the following conduct committed against a family or household member: (a) a physical assault, (b) a sexual assault, or (c) stalking as defined in RCW 9A.46.110.

Here, the trial court imposed a mandatory restriction on Scott's residential time but failed to find that Scott had a history of acts of domestic violence. Instead, the trial court based the mandatory restriction on its finding that Scott "displays characteristics of a domestic violence perpetrator." CP at 57. Although that finding may imply that Scott is at risk of committing acts of domestic violence in the future, that finding does not support a conclusion that Scott has a *history* of domestic violence.

Arguing to the contrary, Maria contends that the record contains substantial evidence to support a finding that Scott has a history of domestic violence. But the trial court made no such finding. This court's review is limited to determining whether substantial evidence supports the trial court's findings of fact and, if so, whether those findings support the trial court's legal conclusions. *Rockwell*, 141 Wn. App. at 242. Therefore Maria's contention fails.

B.   *Mandatory Restrictions on Maria*

Next, Scott claims that the trial court erred by failing to impose mandatory parenting plan restrictions on Maria. Scott challenges both (1) the trial court's legal conclusion that Maria did not have a history of acts of domestic violence, given the trial court's findings of fact, and (2) the trial court's factual findings, given the evidence in the record. We find no error.

1. *Support for Conclusions of Law*

Scott contends that the trial court's findings of fact established, as a matter of law, that Maria had a history of acts of domestic violence as defined in RCW 26.50.010(1). We disagree.

RCW 26.50.010(1) defines domestic violence to include "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members." RCW 26.50.010(1)(a). Here, the trial court found:

> 10. [Maria] was physically aggressive toward [Scott] and engaged in incidents of unruly behavior and threw objects when she became angry with [Scott], actually breaking property.
>
> 11. At the time of separation in 2009, [Maria] engaged in acts of uncontrolled anger and a display of rage that resulted in a domestic violence protection order being issued.

CP at 54.

Together, these findings establish that Maria committed a single act of domestic violence. Specifically, finding of fact 11 establishes that Maria assaulted Scott at the time of their separation in 2009, when Maria admittedly grabbed Scott's shirt. In contrast, finding of fact 10 does not mention any other act involving physical harm, bodily injury, assault, or the infliction of imminent physical harm, bodily injury, or assault. Therefore finding of fact 10 does not establish that Maria committed an act of domestic violence as defined in RCW 26.50.010(1).

Arguing to the contrary, Scott asserts that Maria's conduct—physical aggression, unruly behavior, throwing objects, and breaking property—could "support a conclusion that [Scott] was placed in reasonable fear of imminent physical harm." Br. of Appellant at 26. But the trial court did not make a finding that Scott had a reasonable fear of imminent physical harm. We presume from the absence of such a finding that Scott failed to carry his burden of proof on this issue.

6

*Smith v. King*, 106 Wn.2d 443, 451, 722 P.2d 796 (1986). Accordingly, the trial court's findings do not establish that Maria committed additional acts of domestic violence as defined in RCW 26.50.010(1).

Standing alone, Maria's act of grabbing Scott's shirt does not amount to "a *history of acts of domestic violence.*" RCW 26.09.191(2)(a)(iii) (emphasis added); *see In re Marriage of C.M.C.*, 87 Wn. App. 84, 88, 940 P.2d 669 (1997) (examining legislative history and stating that "the term 'history of domestic violence' was intended to exclude 'isolated, de minimus incidents which could technically be defined as domestic violence'"). Therefore, on the facts found by the trial court, RCW 26.09.191(2) does not require the imposition of mandatory parenting plan restrictions against Maria. Scott's argument fails.[6]

## 2. *Findings of Fact*

In the alternative, Scott argues that insufficient evidence supports the trial court's findings of fact because the trial court failed to find facts showing that Maria has a history of domestic violence. Scott appears to be arguing that insufficient evidence supports the findings of fact as a whole because the trial court did not make the finding he promoted. This argument lacks merit.

We do not retry the facts on appeal, weigh conflicting evidence, or judge the credibility of witnesses. *In re Marriage of Rich*, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996); *In re*

---

[6] Scott further argues that, in declining to rule that Maria had a history of acts of domestic violence, the trial court drew an untenable distinction between "unreasonable acts of anger" and "acts of domestic violence that involved coercion and control." CP at 56-57. Because we review the trial court's conclusions of law de novo and are not bound by the trial court's reasoning, we do not address this argument. *See Texaco Ref. & Mktg., Inc. v. Dep't of Revenue*, 131 Wn. App. 385, 400, 127 P.3d 771 (2006).

*Marriage of Thomas*, 63 Wn. App. 658, 660, 821 P.2d 1227 (1991). Instead, we accept the trial court's factual findings when substantial evidence supports them. *Thomas*, 63 Wn. App. at 660.

Citing his own testimony, Scott asserts that "[t]he trial evidence regarding Maria's conduct established a history of acts of domestic violence." Br. of Appellant at 27-28. But, with the exception of grabbing Scott's shirt and destroying the camera, Maria denied committing the acts that Scott alleged. Maria's testimony is substantial evidence that the events Scott described did not occur.

Substantial evidence supports each of the trial court's findings of fact. The trial court had the discretion to disbelieve Scott and was under no obligation to find that Maria had a history of domestic violence. Therefore, Scott's argument fails.[7]

C.      *Whether Living with Scott Would Be Healthy for RC*

Scott next argues that the trial court erred when it determined that living with Scott would be unhealthy for RC, for two reasons: (1) the trial court failed to make a factual finding that it is unhealthy for a child to be raised by a domestic violence perpetrator and (2) substantial evidence in this record would not support such a factual finding. We disagree.

In conclusion of law 7, the trial court determined:

> Because [Scott] displays characteristics of a domestic violence perpetrator, [RC] should live primarily with [Maria]. It would not be healthy for [RC] to be raised by his dad because of the domestic violence traits [Scott] demonstrated with respect to [Maria] during the parties' relationship.

---

[7] Because Maria did not have a history of acts of domestic violence, we do not address Scott's argument that the trial court erred by entering a parenting plan that did not impose mandatory restrictions on Maria.

CP at 57. Scott does not challenge the trial court's finding that he displays the characteristics of a domestic violence perpetrator, and thus it is a verity on appeal. *Akon*, 160 Wn. App. at 57.

First, Scott argues that the trial court failed to make a factual finding that it is unhealthy for a child to be raised by a domestic violence perpetrator. We disagree; conclusion of law 7 contains a factual finding that it would not be healthy for RC to live with Scott because Scott displays characteristics of a domestic violence perpetrator. Regardless of whether the trial court has labeled a statement as a finding of fact or conclusion of law, we review the statement for what it is. *See Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). Accordingly, the trial court made a factual finding that it is unhealthy for a child to be raised by a domestic violence perpetrator.

Second, the factual finding is not erroneous. This court reviews a challenged factual finding for substantial evidence. *Rockwell*, 141 Wn. App. at 242. Substantial evidence clearly supports the factual finding embedded in conclusion of law 7. The trial court's unchallenged finding that Scott displays characteristics of a domestic violence perpetrator is, by itself, sufficient to persuade a fair-minded, rational person that it would be unhealthy for Scott to raise RC. *Rockwell*, 141 Wn. App. at 242. Scott's argument fails.

D. *Consideration of RCW 26.09.187(3) Factors on Remand*

Scott further claims that, because mandatory parenting plan restrictions on Scott were unwarranted, this case must be remanded for the trial court to reweigh the factors listed in RCW 26.09.187(3)(a). We agree.

RCW 26.09.187(3)(a) lists seven factors for the court to consider in crafting a parenting plan, provided that "the limitations of RCW 26.09.191 are not dispositive of the child's

residential schedule."[8] On remand the trial court should consider the factors in light of this court's ruling on RCW 26.09.191.

## ATTORNEY FEES

Maria requests attorney fees on appeal under Fed. R. Civ. P. 11 and RCW 26.09.140. We deny her request.

A party may recover attorney fees or costs on appeal if applicable law authorizes the award. RAP 18.1(a). But the Federal Rules of Civil Procedure are not applicable law in this court. FED. R. CIV. P. 1; RAP 1.1(a).

Under RCW 26.09.140, we may award attorney fees to the prevailing party in an appeal from a dissolution order, upon a showing of financial need and the other party's ability to pay. *In re Marriage of Hoseth*, 115 Wn. App. 563, 575, 63 P.3d 164 (2003). When a showing of financial need is required, it must be made in an affidavit filed no later than 10 days before this

---

[8] The RCW 26.09.187(3)(a) factors are:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
> (iii) Each parent's past and potential for future performance of parenting functions as defined in RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
> (iv) The emotional needs and developmental level of the child;
> (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
> (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
> (vii) Each parent's employment schedule . . . .
> Factor (i) shall be given the greatest weight.

No. 42996-9-II

court is scheduled to consider the appeal. RAP 18.1(c). Because Maria failed to file an affidavit of need, she is not entitled to fees under RCW 26.09.140.

We affirm in part, but we reverse the imposition of mandatory parenting plan restrictions on Scott. We remand for the trial court to reconsider the parenting plan in light of our decision and the factors listed in RCW 26.09.187(3).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, C.J.

We concur:

Johanson, J.

McCarthy, J.P.T.

11