

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of )<br><br>CORRIE WEBER, )<br><br>Respondent, )<br><br>and )<br><br>BLAINE J. WEBER, )<br><br>Appellant. ) | No. 72148-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: August 31, 2015 |

BECKER, J. — In this postdissolution proceeding, appellant Blaine Weber sought declaratory judgment regarding the terms of his current and future maintenance obligation. A superior court commissioner denied the motion. On a motion for revision, a superior court judge affirmed the denial. We hold the superior court acted within its discretion in determining that declaratory judgment was not the appropriate mechanism to resolve the parties' dispute. Prior orders suspending the maintenance obligation during the economic downturn did not modify the total amount of maintenance downward in the way appellant contends. We affirm.

## FACTS

Corrie and Blaine Weber married in 1974.[1] During the marriage, Blaine was employed as a principal in an architectural firm he founded and Corrie was employed as a legal secretary. In 2007, Corrie filed a petition to dissolve the parties' 33-year marriage.

The parties reached a mediated property settlement agreement that was incorporated by reference into the 2008 decree of dissolution. The parties agreed that Blaine would pay maintenance of "$6,000 per month [to Corrie] for 72 months commencing March 1, 2008 and ending February 28, 2014." The parties agreed Blaine would then "pay spousal maintenance . . . in the sum of $4,000 per month for 36 months commencing March 1, 2014 and ending February 29, 2017." Over 9 years, the total amount of maintenance to be paid was thus $576,000.

The primary community property asset was the parties' ownership interest in the architecture firm. The court awarded the shares in the firm to Blaine. In order to achieve the agreed upon division of community property assets, the decree provided for Blaine to make a transfer payment of $465,000 to Corrie, secured by a promissory note and payable in four annual installments beginning in 2009. Interest on the note accrued at six percent per year, but a missed installment payment would cause the interest rate to double.

Between 2005 and 2007, Blaine's annual income ranged between approximately $370,000 and $515,000. However, between mid-2008 and 2011,

---

[1] For clarity, we refer to each party by first name.

the economic recession and housing market collapse greatly affected the income generated by the architectural firm. Based on these circumstances, in March 2009, Blaine filed a petition to modify maintenance.

On June 26, 2009, King County Court Commissioner Leonid Ponomarchuk entered an order stating: "The Petition for Modification of Maintenance is granted." The commissioner entered a temporary order continuing trial on the motion and suspending maintenance payments for three months:

> The maintenance is not non-modifiable and the Court has discretion to modify.
> Obligor has made a showing of grounds/basis for modification. The court denies the request to terminate maintenance but will suspend the maintenance for the months of June, July, Aug and September 2009, pursuant to the authority set forth in [In re Marriage of Drlik, 121 Wn. App. 269, 87 P.3d 1192 (2004)].
> The court will review the maintenance suspension on September 25, 2009 and is continuing the trial to that date.

The commissioner's order required Blaine to provide updated financial information before the trial date and denied the requests of both parties for attorney fees.

Three months after entry of this order, Blaine filed a CR 60(b) motion to vacate the transfer payment provisions of the dissolution decree. Around the same time, Blaine defaulted on the first installment on the promissory note, triggering the doubling of the interest rate. A court commissioner denied the CR 60 motion, ruling that the global economic conditions did not provide a sufficient basis to set aside the final judgment. The superior court denied a motion for revision. In an unpublished decision, this court affirmed. See In re Marriage of

Weber, No. 64739-3-I, noted at 162 Wn. App. 1001 (2011). In September 2013, Blaine made a transfer payment of $591,649 to Corrie to pay off the promissory note.

No review hearing took place in September 2009. Between 2009 and 2011, the parties entered several orders stipulating to a continuance of the "terms and conditions" imposed in the June 2009 order and to a continuance of the trial by affidavit on Blaine's modification petition.

A trial by affidavit finally occurred on July 29, 2011, before then King County Superior Court Commissioner Lori K. Smith. The commissioner expressly found a "basis to modify the maintenance downward." At the time of the July 2011 trial, Blaine still had no significant income. The court imputed income to Blaine of $100,000 per year and income to Corrie based on the median income for her age. The court then modified maintenance to a minimum of $2,000 and maximum of $6,000 per month according to a variable formula:

> The court modifies the maintenance obligation to $2,000 per month beginning August of 2011. Further, if Mr. Weber receives a draw of more than $6,000 per month, he shall pay to Mrs. Weber as additional maintenance 50% of the amount over $6,000, such that if he received $10,000, his maintenance obligation for that month shall be $2,000 + $2,000 but maintenance shall not exceed terms of the original settlement agreement.

The order further stated that the matter "shall be reviewed" in one year, in July 2012, on the family law calendar. The commissioner invited the parties to bring a motion sooner if Blaine received income and "not just draws."

In August 2011, the same commissioner denied Blaine's motion to reconsider the order and awarded attorney fees to Corrie. Although Blaine's

motion to reconsider is not included in the record on appeal, it appears that he primarily challenged the imputation of income and the evidence supporting the court's decision to order a minimum monthly maintenance payment of $2,000.

Neither party requested the review hearing called for by the July 2011 maintenance order. Blaine's income rebounded and eventually surpassed its previous level. In early 2012, he began to pay monthly maintenance at the rate of $6,000.

The parties' original agreement provided for the fixed rate of maintenance to drop from $6,000 to $4,000 on March 1, 2014. Accordingly, on that date, Blaine paid Corrie maintenance of $4,000. Corrie objected. She claimed that Blaine was not entitled to reduce his payment because she was entitled to 72 months of maintenance at a rate of $6,000 and by that calculation, Blaine owed $172,000 in unpaid maintenance for the initial 72-month period. Corrie claimed she was entitled to receive continued payments at $6,000 until the shortfall was paid, and only then would the 36-month term of reduced maintenance commence.

Shortly after this exchange, on April 17, 2014, Blaine filed a "Motion for Declaratory Relief Re: Terms of Maintenance Obligation." He sought declaratory relief as to his current and future maintenance obligation based on the June 2009 and July 2011 orders. Based on the language of these orders, Blaine asked the court to declare that (1) the June 2009 order suspending maintenance "relieved" him of the obligation to pay maintenance during the suspension period with no obligation to "make up" those payments; (2) the July 2011 order lifting the

suspension and modifying maintenance did not require Blaine to compensate Corrie for reduced maintenance paid under the variable formula; (3) the July 2011 order did not change the decree's provision setting March 2014 as the date when the monthly maintenance payments would drop to $4,000; and (4) the July 2011 order did not change the decree's provision setting February 2017 as the date when maintenance terminates.

Corrie opposed Blaine's motion. Corrie argued that Blaine's request for declaratory judgment should be dismissed as a veiled and inappropriate request for modification and retroactive termination of spousal maintenance. Corrie also argued that declaratory judgment was not appropriate in a case involving modifiable spousal maintenance. Corrie asserted that Blaine was merely attempting to prevent a future request to extend maintenance beyond 2017 if the financial circumstances warranted such a request.

In May 2014, Commissioner Bonnie Canada-Thurston denied the motion for declaratory relief in an order stating that the 2009 order "was not a modification of the maintenance order" and Commissioner Ponomarchuk's use of the term "suspended" did not under any circumstances "terminate or nullify" Blaine's obligation under the parties' original property settlement agreement. "At the original and final TBA [trial by affidavit] the trial court had the authority to retroactively modify the maintenance back to the date of filing of the modification. That court did not." The order stated that it would be "unconscionable" for the court to make any changes retroactively to the property settlement agreement and doing so "would violate the terms of arms length bargaining" that set up the

6

property settlement agreement and "would be analogous to an impermissible retroactive modification of maintenance."

Blaine moved for revision. Following a hearing, King County Superior Court Judge Tanya Thorpe denied the motion. The court ruled that there was no basis for declaratory relief because the pertinent orders "are clear on their face regarding spousal maintenance being suspended and then providing a formula for future maintenance to be paid." The court affirmed the decision and findings of commissioner Canada-Thurston "consistent with this court's oral ruling and these additional findings."

Both the commissioner and the superior court judge declined to award fees. Blaine appeals.

## ANALYSIS

In an appeal from a decision on a motion to revise a commissioner's ruling, this court reviews the decision on revision, not the commissioner's ruling. Boeing Emps'. Credit Union v. Burns, 167 Wn. App. 265, 270, 272 P.3d 908, review denied, 175 Wn.2d 1008 (2012). Accordingly, we must determine whether the superior court abused its discretionary authority under RCW 2.24.050 by refusing to revise the commissioner's order denying Blaine's motion for declaratory judgment. See In re Marriage of Dodd, 120 Wn. App. 638, 644, 86 P.3d 801 (2004). To the extent we are called upon to interpret the language of the prior orders, our review is de novo. In re Marriage of Chavez, 80 Wn. App. 432, 435-36, 909 P.2d 314, review denied, 129 Wn.2d 1016 (1996).

Blaine claims that the superior court committed reversible error by denying his motion. In his view, the 2009 commissioner's order extinguished his maintenance obligation for the period when maintenance payments were suspended. He argues that "suspend" means to stop, rather than defer. He relies on the absence of language in the 2009 order stating that the obligation would continue to accrue during the period of suspension. He also points out that the 2011 order did not include a requirement to pay maintenance arrearage, nor did it alter the dates and caps set forth in the decree. For this reason, he contends that the superior court should have declared that his maintenance obligation was capped at $4,000 per month after March 2014 and that it terminates altogether in 2017 according to the terms of the original decree.

A threshold issue, however, is whether Blaine was entitled to declaratory relief. In briefing before this court and during oral argument, Blaine's counsel suggested that his motion was merely a request for clarification of the 2009 and 2011 orders. But the motion was clearly brought under the authority of the Uniform Declaratory Judgments Act, chapter 7.24 RCW, and it expressly sought a judicial declaration of his "rights" under the 2009 and 2011 orders.

Under the Uniform Declaratory Judgments Act, a court has the power to declare "rights, status and other legal relations." RCW 7.24.010. A decree, or an agreement merged therein, may be subject to a declaratory action to ascertain the rights and duties of the parties. Byrne v. Ackerlund, 108 Wn.2d 445, 453-55, 739 P.2d 1138 (1987). But historically, our courts have often limited the operation of the Uniform Declaratory Judgment Act to cases where there is no

statute providing a satisfactory alternative legal remedy. Grandmaster Sheng-Yen Lu v. King County, 110 Wn. App. 92, 98-99, 38 P.3d 1040 (2002); Ronken v. Bd. of Comm'rs of Snohomish County, 89 Wn.2d 304, 310, 572 P.2d 1 (1977) (granting declaratory relief is within the discretionary authority of trial courts, but courts should be "circumspect" about granting such relief).

The parties have a genuine dispute about how and whether the 2009 and 2011 orders affect the total amount of maintenance Blaine will be required to pay. Nevertheless, as the superior court noted in the oral ruling, Blaine sought declaratory judgment with regard to orders that were "modifiable and, in fact, the Court had previously modified." Blaine concedes that the maintenance provisions agreed to and incorporated into the decree are modifiable. They continue to be so. And as the superior court further observed in its oral ruling, by seeking declaratory judgment with respect to orders that had been in place for several years, Blaine circumvented the specific review process on the family law calendar set forth in those orders. Chapter 26.09 RCW is the comprehensive statutory scheme that governs virtually all aspects of dissolution proceedings, including support obligations. Review of maintenance based on current circumstances continues to be available on the family law motions calendar. Because review in a family law proceeding is available, the trial court did not abuse its discretion in denying Blaine's motion for declaratory relief.

In any event, Blaine's interpretation of the 2009 and 2011 orders is not compelling. Blaine argues that the commissioner's use of the term "suspend" in the 2009 order means that maintenance was forgiven or extinguished during the

9

period that payments were suspended. He cites no authority supporting that interpretation.

The only pertinent authority is the case cited in the 2009 order and by the superior court, Drlik, 121 Wn. App. 269. In Drlik, the appellate court simply held that given the broad definition of "modify," the trial court's authority to modify maintenance included the authority to suspend it. Drlik, 121 Wn. App. at 274-75. The case does not hold that "suspend" has a single, fixed meaning.

The 2009 order does not explicitly state that the maintenance obligation will continue to accrue while suspended, but neither does it state that it will not. In 2009, the commissioner suspended maintenance with the expectation that the suspension would last for only three months during a short continuance of the trial on the petition to modify. In these circumstances, it was more reasonable for the trial court to conclude that the commissioner intended for Blaine's maintenance obligation to be deferred, not extinguished.

The commissioner's intent reflected in the 2011 order was to reassess maintenance based on updated financial information by June 2012 at the latest. This too undermines Blaine's argument. Like the 2009 order, the 2011 order modified maintenance downward only on a temporary basis. There is no language indicating it was intended as a definitive reduction of the total maintenance obligation created by the decree.

Attorney Fees

Corrie requests attorney fees under RCW 26.09.140 and RAP 18.1. This provision gives the court discretion to award attorney fees to either party based on the parties' financial resources, balancing the financial need of the requesting party against the other party's ability to pay. In re Marriage of Pennamen, 135 Wn. App. 790, 807-08, 146 P.3d 466 (2006). In exercising our discretion, we examine the arguable merit of the issues and the parties' financial resources. In re Marriage of C.M.C., 87 Wn. App. 84, 89, 940 P.2d 669 (1997), affirmed, 136 Wn.2d 800, 966 P.2d 1247 (1998).

Corrie relies on the financial affidavits both parties submitted below in 2014 and designated for the record on appeal. Blaine responds in his reply brief that those affidavits demonstrate that Corrie does not have a need because she continues to receive maintenance and he does not have the ability to pay.

Corrie now objects to the current financial declaration submitted by Blaine. Blaine now objects that Corrie has waived her right to request fees on appeal by filing her financial declaration, the same declaration in the appeal record, after the deadline established in RAP 18.1(c). We exercise our discretion to waive the deadline and to consider the financial declarations of both parties. See RAP 1.2(a); RAP 18.8(a). In consideration of the merits and the financial circumstances, we conclude that Corrie is entitled to an award of attorney fees on appeal, subject to her compliance with that portion of RAP 18.1 requiring her to submit an affidavit of fees and expenses.

Affirmed.

11

WE CONCUR:

_Becker, J._

_Dwyer, J._

_Appelwick, J._