IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>JEY-HSIN CHEN,<br><br>     Appellant,<br><br>and<br><br>SARAH PARSONS,<br><br>     Respondent. | No. 83148-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Jey-Hsin Chen appeals the superior court's order revising a court commissioner's order granting his petition to modify spousal support. Chen argues the modification is warranted because he demonstrated a substantial change in circumstances not considered when the spousal maintenance order was entered. Finding no error, we affirm.

FACTS

Jey-Hsin Chen and Sarah Parsons married in 1996 and separated in September 2017. Chen petitioned for dissolution May 2018. Chen is a 50-year-old pathologist who is a partner physician at a company called CellNetix Pathology and Laboratories. Parsons, age 65, is a high school graduate who has been a stay-at-home mother since the couple adopted their daughter in 2007.

The parties disputed how to calculate Chen's income for purposes of establishing his obligation to pay maintenance and child support. Much of this dispute revolved

Citations and pin cites are based on the Westlaw online version of the cited material

around complex tax issues regarding the nature and structure of Chen's compensation. As a CellNetix partner, Chen receives income in the form of partnership distributions reported to the individual via IRS Form K-1.  At the time of dissolution, Chen's income included a guaranteed annual salary of $240,000 plus a percentage of the company's net income.[1]  Parsons sought a maintenance award of $15,000 per month.  Chen asserted that he is self-employed and "will have little to live on" if Parsons is awarded more than $8,000 per month.

On August 28, 2019, following a six-day trial, the superior court entered findings of fact and conclusions of law.  The court reasoned that Parsons was entitled to a substantial maintenance award, as she supported Chen during his education and it is unrealistic for her to be retrained given her age.  The court found that Chen's income should be based on his net income as shown on his end-of-year income statement, as his K-1 income includes amounts which federal tax law requires be added back in as gross income but which he does not actually receive.  Based on Chen's 2017 year-end income statement, the court found his annual net income was $249,481 ($20,790 per month).  The court declined to use Chen's 2018 year-end income statement because it found he deliberately withheld too much for his federal taxes that year.  The court ordered Chen to pay Parsons $12,000 per month through December 2026 and $5,000 per month through December 2031, the month before Parsons's 75th birthday.

At a post-trial hearing in September 2019, the parties notified the court that Chen had overpaid his income taxes in 2017, not 2018.  The parties then continued to debate how best to calculate Chen's income.  Chen proposed that his income be based on his

---

[1] Chen's 2018 adjusted gross income was $378,095.

2018 year-end income statement with support payments added back in or, alternatively, his adjusted gross income from the parties' 2018 tax return, with taxes calculated based on his current "single" filing status. Parsons proposed using, at minimum, an adjusted annual gross income of $432,356.

On November 7, 2019, the court entered final dissolution orders. For purposes of calculating child support, the court adopted Chen's proposal to use his 2018 tax return as his adjusted gross income. Consistent with its previous findings, the court awarded Parsons maintenance of $12,000 per month through December 2026 and $5,000 per month through December 2031.

On November 18, 2019, Chen moved for reconsideration of the maintenance award. Chen argued that his estimated monthly post-divorce tax liability had increased and that after paying taxes, maintenance, retirement contributions, insurance, and child support, his income would be substantially less than that of Parsons. He asserted that the child support worksheet utilized to calculate maintenance did not accurately calculate self-employment taxes, thus understating his tax liability. He stated that the actual annual liability on his adjusted gross income was $133,043 ($11,087 monthly), leaving him with a monthly income of $6,636 in contrast to Parsons's monthly income of $12,837.

On March 31, 2020, the superior court granted reconsideration in part and ordered Chen to pay Parsons $12,000 per month for the remainder of 2020, $10,000 per month through October 2024, and $3,000 per month through December 2031. The court was "persuaded that the amount of maintenance the Court previously ordered may be too high" but specified that it was "not prepared to re-address taxation issues,

3

as these arguments have evolved with each attempt to shape the Court's decision." The impact of this order was a total reduction of $466,000 in Parsons's maintenance award. Three days after the court entered its final order, Chen filed a petition to modify maintenance based on a significant reduction in income due to the COVID-19 pandemic. That modification action was later dismissed by agreed order. Chen did not appeal the March order granting reconsideration in part.

On December 31, 2020, Chen again petitioned to modify spousal support based on a substantial change in circumstances since the March 2020 order on reconsideration. He argued (1) his net income is significantly less than the court contemplated because his post-divorce income tax liability is higher, and (2) his income has been significantly reduced due to the COVID-19 pandemic, leaving him with $42,081 less than needed to pay his taxes for the year. In opposing modification, Parsons argued that Chen's increased tax liability was not a substantial change in circumstances given that tax issues had already been addressed and briefed numerous times during and after trial. She asserted that the superior court was aware of Chen's tax liability and had already considered its impact on his income when it substantially reduced his maintenance obligation on reconsideration. She also argued that Chen failed to demonstrate that the COVID-19 pandemic had a significant or lasting impact on his income.

On June 25, 2021, following a hearing, a superior court commissioner agreed with Chen that his higher taxes and the COVID-19 pandemic constituted a substantial change in circumstances to warrant modifying maintenance and that the reduction in income was not contemplated by either party or the court when the spousal support

order was issued. Specifically, the commissioner found (1) the superior court's order on reconsideration, which stated that the court was "not prepared to re-address taxation issues," indicates that Chen's present net income is significantly less than the trial court contemplated, and (2) Chen's income has been reduced due to the COVID-19 pandemic. The commissioner thus reduced spousal support to $7,200 per month through October 2024 and $2,160 per month through December 2031, with a retroactive start date of January 1, 2021. The commissioner denied both parties' requests for an award of attorney fees and Parsons's request for an award of sanctions.

Parsons moved to revise the commissioner's ruling. She argued, among other things, that the commissioner erred by (1) failing to consider the substantial reduction in maintenance on reconsideration, (2) failing to consider evidence about Chen's taxes on reconsideration that effectively matched the evidence provided on the motion to modify, and (3) finding that the superior court's statement about not readdressing taxation issues on reconsideration meant that the court did not consider Chen's tax information.

On August 23, 2021, the superior court granted revision and entered the following findings:

> A. The Commissioner's Order incorrectly concludes the Trial Court did not already contemplate Petitioner's greater tax obligation with a single marital status, as submitted by him in his November 2019 Motion on Reconsideration.
>
> B. Petitioner's AGI and net income, as considered by the trial court on reconsideration, varied between 2018 and 2020, first increasing in 2019 and then decreasing in 2020. The average difference is not a significant change that was not contemplated by the Trial Court.
>
> C. Although the Order on Reconsideration ordered a workable support amount, the 2020 support obligation ($12,000 per month before being reduced to $10,000 per month in 2021) resulted in Petitioner failing to pay his taxes and borrowing to do so.

5

D. Petitioner has failed to demonstrate a substantial change of circumstances under RCW 26.09.170.

E. The Order entered by the Commissioner Pro Tern imposes an unrealistic and unfair financial burden on Respondent by ordering a retroactive start date and a significant reduction to support for the remaining eleven (11) years it is owed.

F. Petitioner has made duplicative requests to the court based on the same allegations (increased tax obligation and reduction in income due to Covid).

In its oral ruling, the revision court emphasized that it believed the commissioner's ruling was "inaccurate and premature" and announced it would revise "100 percent" of what the commissioner did, thereby returning maintenance to the amount ordered on reconsideration. The court declined Parsons's request for an award of attorney fees and sanctions, finding that "things are generally equalized" and that there was no intransigence.

Chen appeals.

## DISCUSSION

"On revision, the superior court reviews both the commissioner's findings of fact and conclusions of law de novo based upon the evidence and issues presented to the commissioner." State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). "[T]he revision court has full jurisdiction over the case and is authorized to determine its own facts based on the record before the commissioner." In re Marriage of Dodd, 120 Wn. App. 638, 644, 86 P.3d 801 (2004). "Once a judge rules on a motion for revision, any appeal is from the judge's decision, not the commissioner's." Tupper v. Tupper, 15 Wn. App. 2d 796, 801, 478 P.3d 1132 (2020).

<u>Substantial Change in Circumstances</u>

RCW 26.09.170(1)(b) provides that a spousal maintenance order may be modified "except as otherwise provided in this section, only upon a showing of a substantial change of circumstances." "The phrase 'change in circumstances' refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse." <u>In re Marriage of Spreen</u>, 107 Wn. App. 341, 346, 28 P.3d 769 (2001) (quoting <u>In re Marriage of Ochsner</u>, 47 Wn. App. 520, 524, 736 P.2d 292 (1987)). A substantial change in circumstances is a change that was "not contemplated at the time the original order [of support] was entered." <u>In re Marriage of Morris</u>, 176 Wn. App. 893, 902, 309 P.3d 767 (2013). The petitioner bears the burden of demonstrating a substantial change in circumstances warranting modification. <u>Spreen v. Spreen</u>, 107 Wn. App. 341, 346, 28 P.3d 769 (2001).

"The determination of whether a substantial change of circumstances justifying modification has occurred is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." <u>Fox v. Fox</u>, 87 Wn. App. 782, 784, 942 P.2d 1084 (1997). A court abuses its discretion when its decision is based on untenable grounds or reasons. <u>In re Marriage of Bowen</u>, 168 Wn. App. 581, 586, 279 P.3d 885 (2012). Substantial evidence must support the findings of fact, and those findings must support the conclusions of law. <u>In re Marriage of Wilson</u>, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). "Substantial evidence supports a factual determination if the record contains sufficient evidence to persuade a fair-minded, rational person of the truth of that determination." <u>Spreen v. Spreen</u>, 107 Wn. App. at 346. A decision not

supported by the record is untenable. State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

Chen argues the revision court erred by concluding he did not demonstrate a substantial change in circumstances, not already considered by the superior court on reconsideration, that warranted a change in his spousal support obligation. This is, Chen contends, because the record shows the superior court did not consider or base reconsideration on his unexpectedly high 2019 taxes and commensurate drop in income. He points out that information about his actual 2019 and 2020 tax liability was not yet available when the parties briefed the reconsideration matter in November 2019, so the court necessarily based its ruling on estimates of his future tax liability. We disagree with Chen.

Substantial evidence supports the revision court's finding that the reconsideration court "already contemplate[d] Petitioner's greater tax obligation with a single marital status, as submitted by him in his November 2019 Motion on Reconsideration." Chen notified the reconsideration court that he faced a higher post-divorce income tax rate, as a result of his single filing status. He argued that his tax liability for future years will be around $11,100 monthly with a "single" status, in contrast to 2018, when his monthly tax liability based on the "more advantageous 'married' status'" was only $7,237 per month. Chen submitted a federal income tax summary showing that his actual annual tax liability on his 2018 adjusted gross income would, after divorce, be $133,043 ($11,087 monthly) based on a marginal tax rate of 35 percent and an effective tax rate of 36.4 percent. Later, in support of his claim that maintenance should be further reduced because "his actual tax liability has proven to be much greater than the amount tha[t]

the Court contemplated," Chen presented a federal income tax summary showing that his tax liability on his 2019 adjusted gross income was $142,842 ($11,903.50 monthly) based on a marginal tax rate of 35 percent and an effective tax rate of 36.5 percent. And while Chen's income decreased in 2020, his marginal and effective tax rates remained the same. The increase in Chen's post-divorce tax rate was not unexpected.

Chen also argues that the court, on reconsideration, could not have based its ruling on Chen's taxes, given its statement that "the Court is not prepared to re-address taxation issues, as these arguments have evolved with each attempt to shape the Court's decision." We are not persuaded this comment means the court neglected to take tax issues into account when it exercised its discretion to grant Chen's motion and reduce his maintenance obligation by $466,000. The court found that the "the amount of maintenance the Court previously ordered may be too high to result in equalizing the incomes of the parties." On reconsideration, in support of his argument that the spousal support award was unreasonably high, Chen argued that his actual annual liability on his adjusted gross income was $11,087 per month. Parsons responded that the court should not revisit the tax calculations on which it based its spousal support award following trial. The court nevertheless chose to equalize the parties' incomes by reducing Chen's maintenance obligation by $466,000. In doing so, the court necessarily "contemplated" Chen's greater post-divorce tax liability.

Next, Chen argues that the revision court erred in finding that the average difference in Chen's net income between 2018 and 2020 "is not a significant change that was not contemplated by the Trial Court." He contends that his 2020 income was severely impacted by COVID-19, resulting in a net income that constitutes a substantial

change in circumstance. We disagree. The record shows Chen's gross monthly income increased in 2019, then decreased in 2020.[2] The trial court stated that Chen's decrease in income due to COVID "is a premature reason" to change the maintenance order, given that "things seem to be going back to normal." The court reasoned that, "[i]f there is a true change in income, based on COVID over a long, long period of time, not six months, not a year, I would say two or more years, then this can come back in front of me to take a look at what's going on." The court also observed that Chen's income is expected to go up and down because he owns a business, "[a]nd we're not going to take more maintenance when his income goes up and we're not going to take less when his income goes down, unless there's something that's so dramatic and long term that it requires readjustment." The court stated that it would retain jurisdiction at least "through the end of next year" to address changing circumstances that may arise. Given that the reduction in Chen's income due to COVID-19 may have been transitory, the court properly exercised its discretion to "see what happens" over time. See In re Marriage of Arvey, 77 Wn. App. 817, 821, 894 P.2d 1346 (1995) (father's decrease in income caused by poor return on stocks and bonds that year was not a permanent income change warranting modifying child support).

Chen also argues that the revision court erred in finding that the commissioner's order imposed "an unrealistic and unfair financial burden on Respondent by ordering a retroactive start date and a significant reduction to support for the remaining eleven (11) years it is owed." He asserts the record shows Parsons lives comfortably in a multi-

---

[2] The record shows that Chen's gross monthly income in 2018 was $38,539, $42,053 in 2019, and $34,325 in 2020.

million dollar home with a budget for luxuries. He further contends that no legal authority precluded the commissioner from tying relief to the date the petition was filed.

However, Chen points to no evidence in the record indicating that Parsons's needs had changed since the court's order on reconsideration. In particular, the court found that Parsons needs to prepare for retirement and cannot be expected to financially support herself. Moreover, Parsons argues—and Chen does not dispute— that when the commissioner ordered a 28 percent reduction in support in June 2021, his gross monthly income had dropped only 4.8 percent from where it was in 2018. Given the relatively minor reduction in Chen's income and no evidence that Parsons's needs had changed, the trial court did not abuse its discretion in concluding that the commissioner's order imposed an unfair financial burden on her.

Lastly, Chen challenges the revision court's finding that he "made duplicative requests to the court based on the same allegations (increased tax obligation and reduction in income due to COVID)." He argues the finding is unwarranted because the revision court declined to award attorney fees to Parsons on this basis. He further argues this finding is unsupported to the extent it relates to Parsons's claim that the court on reconsideration previously considered Chen's unexpectedly high taxes. The record shows that Chen raised these issues multiple times below. Substantial evidence supports this finding.

<u>Attorney Fees</u>

Parsons requests attorney fees on appeal under RAP 18.1 and RCW 26.09.140. RAP 18.1(a) provides that we may grant attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." RCW

26.09.140 allows us to award reasonable costs and attorney fees to either party on appeal "after considering the financial resources of both parties." In deciding whether to award fees on appeal pursuant to RCW 26.09.140, this court considers the merit of the issues on appeal and the parties' financial resources. In re Marriage of C.M.C., 87 Wn. App. 84, 89, 940 P.2d 669 (1997). Parsons submitted an affidavit of financial need, as required by RAP 18.1(c). Although that rule provides that a party may file and serve an answer within seven days after service of the affidavit, Chen did not do so. We grant Parsons's request for an award of reasonable costs and attorney fees, subject to her compliance with RAP 18.1(d).

Parsons also requests an award of attorney fees on appeal based on Chen's alleged intransigence. "When intransigence causes the party seeking attorney fees 'to require additional legal services,' the parties' relative financial resources are irrelevant." Bresnahan and Bresnahan, 21 Wn. App. 2d 385, 411, 505 P.3d 1218 (2022) (quoting In re Marriage of Foley, 84 Wn. App. 839, 846, 930 P.2d 929 (1997)). "'Intransigence' may be shown by 'litigious behavior, bringing excessive motions, or discovery abuses.'" In re Kelly and Moesslang, 170 Wn. App. 722, 740, 287 P.3d 12 (2012) (quoting In re Marriage of Wallace, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002). We decline to award fees on this basis.

Affirmed.

_____
Coburn, J.

WE CONCUR:

_____       _____
Andrus, C.J.                           Mann, J.

12